Nicholas M. Pette, J.
The petitioner, hereinafter referred to as “Mid-Island”, applies for an order pursuant to article 78 of the Civil Practice Act, reviewing and reversing the determination of the respondent, George K. Wyman, Commissioner of Social Welfare of the State of New York, hereinafter referred to as “ Commissioner ’ ’, which determination was to the effect that the hospital reimbursement formula of the respondent Associated Hospital Service of New York, hereinafter referred to as “ AHS ”, was “ adequate ” in its application to Mid-Island, and for such other and further relief as to the court may seem just and proper in the premises.
It appears that in 1955 William E. F. Werner, M.D. and three other physicians and a builder, one Will N. Clurman, formed a corporation named Toren, Inc., for the purpose of constructing a hospital in Bethpage, Long Island, New York. Due to failure of a mortgage commitment the hospital was constructed with a deficit of approximately $1,000,000. Dr. Werner and his partners then arranged a sale of the land and the building to a third party at arm’s length, for the sum of $3,000,000. They received $1,000,000 in cash which was given to the mechanics’ lienors, a second mortgage for about $1,250,000, and the purchaser assumed a building loan for about $750,000.
It further appears that the third party, the purchaser, Simon Cohen Realty Company, leased the premises to Toren, Inc., for a term of 30 years with renewal options for a rental of the sum of $350,000 per annum plus payment of all real estate taxes.
It also appears that Toren, Inc., then subleased the premises and the equipment therein to William E. F. Werner, M.D., who thereupon applied to the Department of Social Welfare for a license to operate Mid-Island Hospital and that such license was *492 granted in June of 1955, which was prior to the enactment of section 35-h of the Social Welfare Law, which by its terms took effect on April 4,1956.
It further appears that in October of 1955 Mid-Island entered into a participating hospital member contract with AHS.
Section 35-b of the Social Welfare Law reads: “ Operation of private hospitals for profit. Only physicians duly licensed by the state department of education and partnerships of such physicians may operate hospitals for profit, except such hospitals as are in operation on the date this section takes effect which are licensed pursuant to any law or are approved by the state department of social welfare. Notwithstanding the foregoing, any such partnership of two or more physicians may also include not more than one dentist duly licensed by the state department of education. ’ ’ (Italics supplied.)
The moving papers and briefs of the petitioner further show that although the license was issued to Dr. Werner, he continued to operate the hospital until April 27,1961 with three doctors, and that for the purpose of distributing any potential tax liabilities among himself and the three other doctors, they formed a limited partnership and filed the certificate thereof in the County Clerk’s office of Nassau County. This was also done for the purpose of effectuating any potential tax savings that might inure to the benefit of the hospital as a result of the loss carried forward, suffered by the hospital during its operation from 1955 to 1961, amounting to approximately $1,500,000.
It also appears that all of the foregoing facts were known by AHS through their yearly audits, their examination of the books and records of both Toren, Inc., and Mid-Island, as well as the reports of the auditors of AHS.
On September 2, 1960, AHS adopted a new formula for reimbursement to member hospitals called the ‘ ‘ Member Hospital Reimbursement Formula ’ ’ (hereinafter referred to as the “Formula”), which Formula on September 12, 1960, was approved by the Superintendent of Insurance and by the Commissioner on September 30,1960. Petitioner first had knowledge of the adoption of this Formula when it received a copy thereof from AHS on July 1, 1961 and then also advised that the Formula would be retroactive for the year 1960 after an audit by AHS auditors for the year 1960 in accordance with the Formula.
It appears that on February 13, 1962, the auditors, in behalf of AHS, made an audit of the fiscal operations of the petitioner *493 in accordance with the terms of the Formula allowing Mid-Island a full allowance of $350,000 for rental for the year 1960 in the computation of the reimbursement Mid-Island was entitled to from AHS; that AHS then paid petitioner a per diem rate based on the full allowance of rental in the sum of $350,000 as shown in said auditor’s report. It appears that this was the first time a rate was set and paid to the petitioner after the enactment of the Formula; that three months later, on March 15, 1962, AHS reversed its position and disallowed the $350,000 rental allowance previously given to the petitioner.
That upon receiving from AHS the report of the latter’s auditors disallowing the full rental of $350,000, petitioner commenced action within the AHS, and after exhausting all of its remedies within AHS’s internal structure, appealed to the Commissioner for the purpose of determining the adequacy of the per diem allowance in accordance with the Formula.
Authority for such application to the Commissioner is set forth in subdivision 2 of section 254 of the Insurance Law which reads: “ § 254. Hospitalization contracts. * * * 2. All rates of payments to hospitals * * * made by such corporation pursuant to the contracts provided for in subsection one shall prior to payment he approved as to adequacy hy the commissioner of social welfare and as to reasonableness by the superintendent.” (Emphasis supplied.)
Since it appears that payment by AHS to the petitioner for the year 1960 was based upon the $350,000 rental allowance and the Insurance Law quoted above requires approval by the Commissioner of these rates of payment by AHS to the petitioner prior to making such payment, the inference is inescapable and it must be reasonably assumed that the full rental allowance of $350,000 was approved by the respondent Commissioner.
In this connection, paragraph twenty-sixth of the Commissioner’s answer to the petition herein states: ‘ ‘ By the provisions of the Insurance Law § 254, subd. 2, the respondent A. H. S. is enjoined from making any payments to the petitioner for any hospital services rendered to the subscribers of the respondent A. H. S. unless the rates of payments prior thereto had first been approved as to adequacy by the Commissioner of Social Welfare and as to reasonableness by the Superintendent of Insurance. ” It is therefore apparent that the Commissioner approved said payment prior to the time the same was paid to the petitioner.
*494 Although there was no change in facts or formula from one audit to the other, when the audit for the second year (1961) was made, the AHS completely reversed itself and disallowed the rental of $350,000.
After exhausting all remedies within the AHS, petitioner made the necessary application to the Commissioner protesting the per diem rate given to the Commissioner by AHS as being inadequate. The Commissioner, by letter dated March 4, 1963, rendered his decision as follows:
“ This is in reference to the appeal submitted to me by Mid-Island Hospital under Section 254.2 of the Insurance Law concerning the adequacy of the per diem rate of payment established by the Associated Hospital Service of New York for 1961.
“ I have reviewed the numerous data submitted to me in connection with this appeal and have determined that the per diem rate of payment established for 1961 in the case of Mid-Island Hospital is adequate.”
The respondents concede that said decision was made without findings.
Respondents, in opposition to petitioner’s instant application, urge that petitioner is not the real party in interest. With this contention the court does not agree.
The instant proceeding was initiated by William E. F. Werner, M.D., as a general partner of a limited partnership, the approved licensee that operated Mid-Island until April 2, 1963. Due to the alleged arbitrary, capricious and unreasonable decision by the Commissioner on March 4, 1963, to stave off bankruptcy on the part of the hospital, Mid-Island sold the hospital and lease. There is no question that at the time of the commencement of this proceeding the limited partnership no longer operated the hospital, although William E. F. Werner, M.D., still' remained the licensee who operated the hospital and to the extent that the claim exists, the petitioner is acting as a liquidating partner and is the proper party petitioner under section 222-a of the Civil Practice Act, now section 1025 of the Civil Practice Law and Rules. (Hunt, Hill & Betts v. Bull S. S. Co., 9 Misc 2d 274 [1957]; see, also, Tioga County Gen. Hosp. v. Tidd, 164 Misc. 273, 285 [1937].) This court is of the opinion that it has before it the real parties in interest and that it can render a decision binding and protecting the respondents.
Respondent Commissioner also urges that the petitioner violated section 35-b of the Social Welfare Law. This appears *495 to be without merit since (a) Mid-Island was licensed by the Commissioner prior to the enactment and effective date of said statute; (b) Toren, Inc., is not the owner of or the operator of Mid-Island, but is merely the lessor of the premises, and in turn subleased the premises to William E. F. Werner, the licensee, and subsequently thereto the limited partnership which became the sublessee; and the only ones who operated the hospital were all duly licensed doctors of medicine.
There is no dispute that the new reimbursement Formula adopted by the AHS was approved by the Superintendent of Insurance as to reasonableness on September 12, 1960 and by the Commissioner as to adequacy on September 30, 1960.
The respondents contend that the determination of the Commissioner is not subject to judicial review. The fallacy of this contention is manifest when article 78 of the Civil Practice Act, now article 78 of the Civil Practice Law and Rules, and section 34 and subdivision 2 of section 257 of the Insurance Law are considered.
Section 257 of the Insurance Law states: “ Arbitration; judicial review. 1. Any dispute arising between a hospital service corporation subject to the provisions of this article and any hospital with which such corporation has a contract for hospitalization may, pursuant to an agreement to that effect in the contract or by subsequent mutual agreement of the parties, be submitted to the commissioner of social welfare for his decision with respect thereto. Any such decision, pursuant to the terms of such submission, shall have the effect of an arbitration award under the provisions of the civil practice law and rules.
“2. Except as provided in subsection one above, all oficial orders of the superintendent of insurance and all final orders or decisions of the commissioner of social welfare made under the provisions of this article shall be subject to judicial review as provided in section thirty-three.” (Emphasis supplied.)
Section 34 of the Insurance Law states: “ Judicial review of orders, regulations and decisions of superintendent. Notwithstanding the specific enumerations of the right to judicial review in this chapter, any order, regulation or decision of the superintendent is declared to be subject to judicial review in a proceeding under article seventy-eight of the civil practice law and rules. Except as provided in section one hundred and twenty-four, the commencement of such proceeding shall not affect the enforcement or validity of the superintendent’s order, regulation or decision under review unless the court shall determine, after a preliminary hearing of which the superin *496 tendent is notified at least forty-eight hours in advance, that a stay of enforcement pending the proceeding or until further direction of the court will not unduly injure the interests of the people of the state, in which case a stay of execution may be granted.”
Section 33 referred to in subdivision 2 of section 257 of the Insurance Law is now section 34 of that law.
In the light of the foregoing quoted provisions of the Insurance Law there can be no dispute but that the determination of the Commissioner is subject to review by this court.
Although petitioner requested a hearing before the Commissioner, the same was not afforded to it. The Commissioner contends that petitioner could have resorted to arbitration as provided in subdivision 1 of section 257 of the Insurance Law. However, had petitioner resorted to arbitration, such arbitration must be “ submitted to the Commissioner of Social Welfare for his decision with respect thereto ” and the Commissioner’s determination would have been a final determination from which petitioner would have no appeal or the right of seeking a judicial review of the determination.
The cases cited by the Commissioner in support of his contention that petitioner was not entitled to a hearing as a matter of law, nor entitled to a judicial review, clearly indicate that they are not applicable here because the statute involved in each of those cases indicate that hearings are required, but that no findings are necessary. In the case at bar, petitioner does not contend that a hearing was required, but the law (Insurance Law, § 257, subd. 2) specifically makes his findings subject to judicial review.
It may not be questioned that the very essence of seeking judicial review of the Commissioner’s rulings in the case at bar is to inform the court and the parties whether or not the findings found by the Commissioner are supported by the evidence presented to him. Since no such findings were made by the Commissioner, it necessarily follows that the decision so made must be annulled or referred back to the Commissioner for the purpose of making such findings as to enable this court to properly review the determination made by him.
Article III, Subdivision E of the- Formula involved here, provides that “ amount of rent paid for the hospital * * * will be included in rental expense provided ’ ’.
“ (a) There is no substantial affiliation between the owners and operators of the hospital and the owners of the premises and equipment of the hospital and
*497 “ (b) The amount of rent is reasonable in light of comparable costs incurred by other proprietary hospitals which own the equipment and premises in which they operate.”
If we surmise that the only possibility for the Commissioner’s determination was a finding that the owner and operator of Mid-Island were the same people or had such an affinity of interest as to constitute being the same people, then the factual situation, uncontroverted in the case at bar, is to the contrary, since the owner of the premises is Simon Cohen Realty Company; the lessee is Toren, Inc., and the petitioner is the sub-lessee and operator of the hospital. There appears to be no evidence to establish that there is any affiliation between the petitioner and the owner of the hospital.
In view of the foregoing, the Commissioner’s decision was unreasonable, capricious and arbitrary.
The following facts are not disputed: (1) There is a four months’ Statute of Limitations from any final decision of a Commissioner of Social Welfare; (2) a person is not entitled to any relief pursuant to article 78 of the Civil Practice Act or article 78 of the Civil Practice Law and Rules until a final determination has been made by the Commissioner; (3) that no final determination against the petitioner was made by the Commissioner until March 4, 1963; (4) that the instant action was brought within the four months ’ period, after the decision, to wit, June 28,1963. Consequently, the respondent’s contention that the four months’ Statute of Limitations has run against petitioner is unfounded.
The contention of the respondent that the four months’ Statute of Limitations runs against the petitioner from the date of the approval of the Formula is without merit for the following reasons: (a) At that time, the Commissioner had made no final determination as to any rate of payment to be made to the petitioner; (b) the first time any determination by the Commissioner, affecting the petitioner, was made was when he approved the payment for 1960 wherein a full allowance of $350,000 rent was made; (c) the first time the Commissioner made a determination adversely affecting the petitioner was March 4, 1963.
It is clear that until such time as the Commissioner renders a decision directly applicable to the petitioner, it had no right to bring any action or proceeding of any nature since it was not a party aggrieved.
That since it is undisputed that the petitioner received full allowance for the rental of $350,000 for the year 1960 and that *498 subdivision 2 of section 254 of the Insurance Law requires that the Commissioner approve the rates of payment to member hospitals of AHS prior to the payment thereof, and that such rental is a factor in determining the rates of said payments, it is reasonable to assume that such rate of payment was pursuant to the statute and was approved by the Commissioner prior to the making of said payment.
The aforesaid payment for 1960 was made in the year 1962, allowing a full rental of $350,000. It then becomes evident that, without any change in the facts having taken place, when the Commissioner finds in the year 1963 that the rate should not include the full rental allowance, and makes no findings in support of his determination, then his action must be deemed arbitrary, since his determination was made upon the exact same facts that were before him previously, and any change in his opinion could only have been as a result of an arbitrary and capricious act since it could not be based upon logic and fact, neither of which had changed since the time of his first approval.
Upon all the papers submitted in this proceeding, this court is of the opinion that the determination of the Commissioner must be reversed and the matter resubmitted to him for further consideration and findings to be set forth in the decision he renders, so that such findings and decision may be properly reviewed by the court upon application made therefor pursuant to the applicable statutes in such case made and provided.